Good morning, your honors. May it please the court, my name is Matt Munderloh. I represent the appellant, Mr. Harlan, in this matter. We've assigned four errors, but my focus this morning will be on the Feretta violation. This court should reverse Mr. Harlan's conviction because the district court did not permit Mr. Harlan to proceed pro se at trial. Does the record reflect any request prior to, in the wake of TM's testimony at trial, any request or suggestion of self-representation? There is no suggestion of a desire for self-representation prior to trial. There are suggestions in the record, in fact, explicit requests for substitute counsel prior to trial. Yeah, I was aware of that. That's a little different. Yes, that's correct, Judge Loken. That is a completely different set of circumstances. Mr. Harlan concedes that his first request to proceed on a pro se basis was the first day of trial, not the last day of trial, not even halfway into the trial. How long was the trial? The trial was a two-day trial, Judge Benton, and the request was made after the government's first witness. I think the government called nine witnesses. But the first witness was the victim, right? The first witness was the victim, but the request was made after the first witness nonetheless, the first of nine. So, the Feretta standard and... Let's stick with the facts now. There's a lot of emphasis on, he wouldn't ask the questions I wanted asked. Now, are those questions in the record? Those questions are... Well, yes. You wrote them down. Do we have the writing that we can see? We do not have the writing. How do we know what those questions were? Well, so, I do think that the questions are in the record when the trial judge inquired of Mr. Harlan why he wanted to proceed on a pro se basis. And so, my memory, Judge Loken, is one of the questions pertained to whether the victim and Mr. Harlan rode together to this boxing match or fight at the casino. Well, there's one example in the addendum on page 17, which would be meaningless impeachment, but I didn't see any recitation of what else he wanted to ask. And I don't know that the record contains a verbatim question and answer in that respect. I don't think that Mr. Harlan... When he says, I don't know what my defenses are and I've only got three hours of courtroom experience, but I wanted to ask the woman I've been living with who's accusing me of assaulting her. I wanted to ask her questions and the lawyer, I wanted him to ask questions and the lawyer wouldn't, and now I want to ask them. That's a very dicey situation. So, I want to know what those questions were. I want to see whether he was looking to intimidate or maybe plead with her to get off me. And Judge Loken, with respect, I don't know that the exact questions really matter under the Feretta standard. It could be that Mr. Harlan didn't want to ask witnesses any questions. In the middle of trial, there's a great deal of discretion here under Feretta and all the cases in construing Feretta. In the middle of trial, the standard... My alarm, my fire alarm would go off in this situation when there's no hint of a desire to self-represent until the accuser with whom he's been in a domestic relation, the accuser leaves the stand and he says, I want to ask her some more questions. And I don't know that the record supports the idea that it was just the trial attorney's refusal to ask certain questions that may have prompted Mr. Harlan to want to proceed pro se. That's what the record is. Well, he was frustrated with his trial counsel for months prior to trial because he had this dispute with trial counsel about... Counsel is doing the right thing. He's reporting the judge, the first he's ever known, and presumably if it's an officer of the court, it's the first he had been advised his client wanted to self-represent, which raises a whole new Feretta ballpark, so to speak. Correct. He reports it. Correct. And the only reason given is, I wanted to ask her... He wouldn't ask the questions I wanted him asked. And I want to do it. And I don't know if the trial judge probed him on other reasons either, but... I just want to know the questions. Now, if the questions weren't put in the record, who suffers for that omission if it's material? His writing to trial counsel was not put in the record. I have to concede that, again, I don't know under the Feretta standard that the nature of the questions matter. If it should have been in the record, was it the trial court's obligation to get it there or what? And I'm not conceding that those questions should be in the record. I don't think that they need to be, because the nature of the questions... Has it got to do with the nature of the abuse of discretion, counsel, what the questions were? No, I don't think so. Because the nature of the questions don't go toward whether Mr. Harlan was asking to represent himself or delay tactics or to obstruct... Questions are most material to a Feretta request in the middle of trial. That's correct, but I don't... If the question showed that, okay, if you can self-represent, now we're going to have a request for a continuance, a demand that she resume testifying, and so forth. Well, there was no request for a continuance, and this is one of those rare cases where... That's the next step. I mean, that's inevitable. And I don't know that the record supports that, and the reason why I say that is because Mr. Harlan was a defendant who, he wanted to proceed to trial at the very first opportunity. Remember, he didn't want to waive his speedy trial rights. Already back in May... No, the next eight witnesses were all law enforcement, right? The correct. So there wasn't any trial left. If he was going to do something, it would have to be, get her back on the stand and let me do my thing. Well, there was plenty of trial left. There were eight of nine witnesses left once he requested to represent himself. So there was plenty of trial left. This isn't a case where, unlike other cases, he made the request on the last day of trial, or there's one case where the defendant made the request, there was only two or three hours left of the trial. That's not this case. This is first day of trial, government's first witness, clear request to proceed on a pro se basis. I don't think there's any dispute that the request was not clear or that the request was somehow equivocal. Do you think we could infer from some of the questions that the court asked that really what he was trying to get at is, is Mr. Harlan prepared to continue with this? Do you understand evidentiary matters? Do you understand the elements? Do you think we could infer that the court was concerned that he would have to stall the case in order to make sure that Mr. Harlan was up to speed? I don't think that we can infer that because it's clear to me, and I think it's clear in the record, that there wouldn't have been delay because Mr. Harlan himself wanted no delay. Again, he wanted the trial to proceed already in May. And so we don't know how the trial would have gone had he been permitted to proceed on a pro se basis, but I would submit that the record doesn't support really any idea that he would have requested to delay the trial or move for a continuance at all. I see that I'm into my rebuttal time. Thank you. Sure. Is it Surello? Surello. Thank you, Surello. May it please the court, counsel? My name is Kelly Surello, and I'm here representing the United States of America, the appellee in this case. To address some of the questions that have already been brought up on the issue of whether Mr. Harlan should have been allowed to proceed pro se, there was no request prior to trial. There were requests for substitute counsel. This was made on the first day of trial, and while there's been a lot of emphasis on the that first witness had testified for approximately three hours, and that was a significant portion of this trial, which was submitted to the jury by the second day. So although it was one witness of nine, it was certainly a substantial portion of the trial that had been occurred. How many hours of witness testimony was there? I don't know that that's in the record. It was submitted, I think, in the middle of... Well, I bet we could figure it out by the, you know, how the court reporters do it. I bet you could get close. Right. Proceed, though. I think it was submitted by the second day, so it's roughly halfway through. There was an inquiry of Mr. Harlan as to why, what questions he wanted to ask, what was his issue with his trial counsel. And the one question that he responded with, as indicated, was a discrepancy in the length of the relationship, that the victim had previously said that they had been together about a year, and at trial had said almost two years. And the trial counsel had told Mr. Harlan he did not believe that issue was relevant. That was the one issue that was raised. This question about whether the victim and Mr. Harlan had ridden together, that was actually in a discussion at the pretrial conference, and it was a discussion about trial strategy and a defense witness that the defendant wanted his counsel to call, and his counsel didn't feel like it was going to be a good issue at trial. And I think that the case law is pretty clear that this difference in defense strategy is not necessarily, certainly with respect to the question of substitute counsel, that's not sufficient to rise to the level of a justifiable disagreement with counsel. We also know that there were multiple opportunities to make a record of what his issue was, and including outside the presence of the government. Well, Feretta doesn't require a breakdown in relationship. I would agree. And my position is, of course, that this motion was untimely because it was never made prior to the empanelment of the jury, and there were opportunities, if this was what he wished to represent himself, there were certainly opportunities to have requested that, and he did not make that request. He specifically... I don't think you have a case that precludes it. True. I would agree. Just because of timeliness. No, I think the Eighth Circuit case law is very clear that a judge could permit someone to proceed pro se if they make the request during the trial, but at that point, it's no longer a constitutionally protected right to proceed pro se. At that point, it's within the trial judge's discretion, and I think, as the questions that the court counsel got into about what his preparation, his ability to immediately proceed and assume trial responsibility, I think that those questions were relevant to whether a delay was going to be necessary. This trial judge is put in a position, mid-trial, of risking, if he allows the defendant to proceed pro se at that point, that it's not going to be an intelligent and knowing waiver of his right to counsel because he was asked questions about, do you know what defenses you could present? And he indicated no. So at that point, if you allow him to proceed pro se, that you're going to face an error because that was not an intelligent and knowing waiver of his counsel. I think we've been pretty clear that you don't have to be good to represent yourself. You don't have to understand the rules of evidence because it is your choice. So the district court was a little thin on assessing his interests and focused quite heavily on his ability to do so. And I would agree with you. If this motion had been made prior to trial, then his ability to perform the trial as well as trial counsel, that would not have been a relevant consideration as long as he knowingly assumed that risk. But I think the case law also indicates that part of the consideration is when you make that motion prior to trial, you have time to prepare yourself to proceed pro se. Whereas when you make that motion in the middle of trial, there is no time to go review or consider what you might want to do and what questions you're allowed to ask. At that point, it's ongoing. They had literally taken a witness out to the hallway in order to conduct this hearing outside the presence of the jury mid-trial. So he had no time to prepare himself additionally. But I would agree with you had the request been timely that that would have been the consideration of the court. Did Mr. Harlan subsequently waive his right to testify? Did he waive his right to testify? He did. Yes. On his own behalf? Yes. Is that relevant to this Feretta inquiry? I don't know that it is, obviously. I mean, there were... It suggests that he wasn't just dying to get his side of the story out. I would agree with that. Well, okay, but that would be one reason to self-represent at the moment when you want an opportunity to cross-examine the accuser. I would agree with that as well. I think his... So apparently, his side of the story wasn't what he wanted to get out. It was something else. Right. And the only question that we know of is this discrepancy on the length of the relationship. I think there's certainly a record that his attorney was advising him that he didn't think it was in his interest to testify, and he apparently chose to follow that advice, though it was also clear that he had the opportunity to choose to testify against counsel's advice. He was asked about what the defense strategy was. Or he said he didn't know the defense theory. Was he asked about what his theory would be if he self-represented? He was. Well, I don't know that he was asked specifically his theory. He was asked repeatedly about, do you have ideas on defense theory, and he answered very non-responsibly. He didn't seem to even understand the question. He was also asked about whether he... I'll tell you what. Is there anything in the colloquy that would confirm my suspicion that the next request after he was allowed to self-represent would be to get the victim back on the stand? Well, certainly that was the only issue that he raised, was additional questions that he had for the victim. So I don't... Was it one question, counsel? You said questions. I picked up on the questions, plural. I thought there was only one question mentioned. And he mentioned that he had written down things. I thought he said, I have questions, and I wrote them down, and then only one came out in the colloquy. Yeah. I think he wrote plural things, but when asked, that was the one thing he cited. He was also asked if he understood the risk of not being able to introduce evidence in his favor, and he answered no to that as well. So I think that that reflects both on maybe whether he was prepared and knew what his trial strategy would be at that point mid-trial. So based on all of those things, I think that the... Specifically, I think United States v. Smith, an Eighth Circuit case that notes the empanelment of the jury being the timeliness of this motion, and I think that the Eighth Circuit has cited to other circuits who have also held, at least the Ninth and the Tenth, have certainly held that the timeliness of the motion, that empanelment of the jury, is an important distinction in this case. I think after the trial begins, as we've noted, a court may grant such a motion, but it may also deny it as untimely, and in this case, I think the court was interested in why and whether that would be a knowing and intelligent waiver at that point, and ultimately decided that the defendant was not prepared to proceed mid-trial, and he emphasized that timing in his ruling, that certainly at this point mid-trial, that the defendant, that the standard was going to be different. So counsel for the appellant has not addressed the other issues. I think the only one really that I would maybe want to address is that he failed to show a justified dissatisfaction warranting a substitution of counsel at that previous hearing that was an address. That's an abuse of discretion standard. All he cited as to the reasons were a difference in trial strategy and less contact than he preferred, but neither of those are sufficient to rise to that level and necessitate that the court grant him additional, or substitute trial counsel. In this case, the counsel had cited numerous reasons for needing additional time, including an expert witness potential, 404B evidence related to the habitual offender, and the distance of witnesses, and the need to interview additional witnesses. So I think that all of those certainly justified the continuance and the exclusion under the Speedy Trial Act. If there are no additional questions, I will take my seat, and I'd ask you to affirm the verdict in this sentence. Thank you. For rebuttal. And now the request for new counsel issue has been opened up, so it's fair game for rebuttal. Okay. So back to the Feretta violation, though, I want to be brief, because the government in its brief, and I think I just heard Ms. Serrallo again argue that there's not a constitutional right to proceed on a pro se basis once the request is made after the trial has started. I don't think that's right. That's not accurate. I mean, the constitutional right doesn't evaporate. That's correct. Just the balancing changes. That's correct. It's a qualified right after the request is made after trial. It's a balancing test. And I would submit that the balancing test doesn't include how many questions the defendant wishes to ask of whichever witness, the quality of those questions, what those questions might pertain to or not pertain to. The case law is clear that if a defendant wants to represent himself, he can proceed at trial in front of a jury, in front of the court, as a fool. And maybe that's what would have happened here. Maybe not. We don't know, because the trial court used the wrong standard. And because the wrong standard was used, this court should reverse. Thank you. Thank you, counsel. Thank you, counsel.